Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Geraldine Soat Brown | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 1459 | **DATE** | 6/20/2003 |
| **CASE TITLE** | Jones vs. Centurion Investment | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]  For the reasons stated in the attached memorandum opinion and order, defendant's motion for summary judgment [20-1] is granted. All pending dates and motions are hereby stricken. Enter Memorandum Opinion and Order. Terminating case.
(11) ■ [For further detail see Memorandum Opinion and Order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | JUN 2 3 2003 | |
| | Notified counsel by telephone. | | date docketed | 35 |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | U.S. DISTRICT COURT | | |
| | Copy to judge/magistrate judge. | | 6/20/2003 | |
| MW | courtroom deputy's initials | 03 JUN 20 AM 11:32 | date mailed notice MW | |
| | | Date/Time received in central Clerk's Office | mailing deputy initials | |

| | |
|---|---|
| KENNETH JONES, et al., ) | |
|     Plaintiffs, ) | Cause No. 02 C 1459 |
| ) | |
| v. ) | Magistrate Judge Geraldine Soat Brown |
| ) | |
| CENTURION INVESTMENT ) | |
|   ASSOCIATES, INC., ) | |
|     Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Kenneth Jones and Leonard Liddell ("Plaintiffs") brought this action against Centurion Investment Associates, Inc. d/b/a Service Distributors[1] ("Defendant"), alleging causes of action under the Fair Labor Standards Act ("FLSA")(29 U.S.C. § 201 *et seq.*) and the Portal to Portal Act (29 U.S.C. § 251 *et seq.*)(Compl. ¶ 1). Plaintiffs allege that they are entitled to overtime pay

---

[1] Defendant states that its proper name is Alpha Baking Co., Inc. and that it has been incorrectly named in the lawsuit. (*See, e.g.,* Def.'s LR Stmt. at 1.) Defendant states that Service Distributors is an assumed name used by Alpha Baking. (Def.'s Mem. at 1; Def.'s LR Stmt. at 1.) In his declaration submitted by Defendant, Jeff Pearson states that Service Distributors is a "subsidiary" of Alpha Baking (Pearson Decl. ¶ 9 [dkt # 20]), but this assertion is not made elsewhere.

This appears to be a case of misnomer. "'Misnomer' denotes the case in which the plaintiff has the wrong name of the right party, while in a case of mistaken identity the plaintiff has named the wrong party." *Athmer v. C.E.I. Equipment Co. Inc.*, 121 F.3d 294, 296 (7th Cir. 1997). Normally, in the case of a misnomer, a party seeks to amend pursuant to Fed. R. Civ. P. 15(c)(3). *See, e.g., Wood v. Worachek*, 618 F.2d 1225, 1229 (7th Cir. 1980) ("amendment with relation back is generally permitted in order to correct a misnomer of a defendant where the proper defendant is already before the court and the effect is merely to correct the name under which he is sued.") In this case, however, neither party has moved to correct the alleged misnomer. However, in light of the outcome of Defendant's motion, the misnomer is not of practical significance because it is not disputed that the proper defendant is before the court. *See English v. Cowell*, 969 F.2d 465, 468 n.6 (7th Cir. 1992)(declining to dismiss case on the basis of alleged misnomer of plaintiff because "the defendants do not claim that they have been confused or otherwise prejudiced").

1

under the FLSA. Plaintiffs' three-count complaint seeks back pay, interest, liquidated damages, and attorneys' fees for alleged violation of the FLSA. The parties have consented to the jurisdiction of a Magistrate Judge. [Dkt ## 17, 18.]

Defendant has moved for summary judgment. [Dkt # 20.] For the reasons discussed below, Defendant's motion is GRANTED.

## BACKGROUND

Defendant's Motion for Summary Judgment was accompanied by a Local Rule 56.1(a)(3) Statement. [Dkt # 20.] Plaintiffs responded with a Local Rule 56.1(b)(3)(b) Statement of Additional Facts [dkt # 28], but no Local Rule 56.1(b)(3)(a) Statement containing "a response to each numbered paragraph in the moving party's statement." Rather, Plaintiffs state in the first sentence of their response brief that "as indicated in Plaintiff's (sic) response to Defendant's LR 56.1 Statement, the facts of the case are not disputed." (Pls.' Resp. at 1.) Defendant filed a response to Plaintiffs' additional facts. [Dkt # 32.] The Seventh Circuit recently stated:

> Local Rule 56.1's enforcement provision provides that when a responding party's statement fails to controvert the facts as set forth in the moving party's statement in the manner dictated by the rule, those facts shall be deemed admitted for purposes of the motion. We have consistently held that a failure to respond by the nonmovant as mandated by the local rules results in an admission.

*Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003)(citation omitted). As a result, all facts in Defendant's Local Rule 56.1(a)(3) Statement are deemed admitted.

Defendant is a wholesaler of bread products. Defendant bakes all of its bread and some buns in a facility in LaPorte, Indiana. (Def.'s LR Stmt. ¶ 3.) Some buns are baked in two other facilities located in Chicago. (*Id.*) Baked goods from the LaPorte, Indiana facility are "generally" loaded on

2

two trucks. (*Id.* ¶ 6.) One truck travels directly to a warehouse in Glendale Heights, Illinois. The other stops at the two Chicago bakeries and then proceeds to Glendale Heights. (*Id.*) The products are unloaded in the Glendale Heights warehouse, where they remain for "no more than several hours." (*Id.* ¶ 9.)

Plaintiffs are or were employed by Defendant as routemen. (Def.'s LR Stmt. ¶ 2.) Routemen load trucks at the Glendale Heights warehouse and deliver the bread products to stores on their routes. (*Id.* ¶¶ 2, 10.) Of the products the routemen deliver, "[b]etween 33% and 50%" are baked in LaPorte." (Def.'s LR Stmt. ¶ 7.) Individual loaves are not assigned a particular destination, thus "a specific loaf of bread loaded on a routeman's truck could be placed in any of the stores on that route if the routeman ordered that variety of loaf." (Def.'s LR Resp. ¶ 2.)

A routeman is responsible for assessing the "needs of each customer on [his] route and record[ing] orders on a spreadsheet." (Def.'s LR Stmt. ¶ 4.) That spreadsheet is submitted to the bakeries to determine how much of each type of product should be baked. (*Id.*) However, "an actual 'sale' is made only after the product arrives at the store . . . [N]o store had a standing contract requiring it to take into its inventory a specific volume or variety of bread product on any particular day." (Def.'s LR Resp. ¶ 4.) If a particular loaf is not sold "it could end up being transferred back to Glendale Heights as stale product." (*Id.* ¶ 2.) Defendant admits that if a routeman failed to sell all of the product on his truck, money was deducted from his pay. (*Id.* ¶ 5.)

The bread products are transported on lightweight plastic trays. (*Id.* ¶ 6.) At the various stores along his route, the routeman moves product into the store, removes it from the trays and places it on the shelves or in displays. He might also leave full trays of additional product in storage areas for later restocking. (Def.'s LR Stmt. ¶ 11.) When the routeman completes his deliveries at

3

each store, he takes the empty trays for the product that he had put on shelves, and any additional trays, and carries those trays back to his truck. After each trip the routeman collects all empty trays from the bread he just delivered, or had previously delivered, and places them on the truck. (*Id.* ¶ 12.) The trays are not stacked in any particular manner. (Def.'s LR Resp. ¶ 7.) Upon returning to the Glendale Heights warehouse, the routeman unloads all empty trays into a pickup area. (Def.'s LR Stmt. ¶ 14.) The empty trays are stored in Glendale Heights "for between a few hours and twenty-four hours" and are not processed during that time period. (*Id.* ¶ 15.) Other employees later load all empty bread trays and some empty bun trays back onto the truck arriving from LaPorte with the next day's orders. (*Id.* ¶ 14.) Those trays are returned to LaPorte for reuse. (*Id.*) Notwithstanding their admission of Defendant's statement that all empty bread trays are returned to LaPorte (Def.'s LR Stmt. ¶ 14), Plaintiffs state that "it is believed believe (sic) that most, if not all of the empty bread trays that I (sic) unloaded would stay at the Glendale Heights warehouse." (Pls.' LR Stmt. ¶ 8.) In support of that statement, Plaintiffs cite the affidavit of plaintiff Kenneth Jones who states that "on most occasions when I would be loading my truck the next morning, the empty bread trays I unloaded on the previous afternoon would often still be in the warehouse and I would re-use them in the morning to load my delivery truck." (Jones Afft. ¶ 8.) Defendant responds that Jones' impression may result from the fact that, because of the pick up schedule of the LaPorte truck, trays may be stored for a few hours three days per week and for 24 hours two days per week. (Def.'s Reply at 5; Pearson Decl. ¶ 9 [dkt # 20].) A "tray report" submitted by Defendant reflects that of the 24,960 trays brought to the warehouse by routemen in the week ending June 1, 2002, 90 trays were not returned to bakeries. (Pearson Decl., Ex. D.) The tray report also reflects that 6,730 trays were picked up by driver returning to LaPorte in that week. (*Id.*)

4

## LEGAL STANDARD

The court may properly grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.

## DISCUSSION

Under the FLSA, employees are entitled to overtime pay if they work more than forty hours a week unless their work is subject to an exemption. 29 U.S.C. § 207(a). Exemptions to the FLSA are to be narrowly construed against the employer. *See, e.g., Auer v. Robbins*, 519 U.S. 452, 462 (1997). The burden is on the employer to show that it is entitled to an exemption. *Klein v. Rush-Presbyterian-St. Luke's Medical Ctr.*, 990 F.2d 279, 282-83 (7th Cir. 1993). The FLSA, 29 U.S.C. § 213(b)(1), provides an exemption to the requirement of overtime pay for employees whose qualifications and maximum hours are regulated by the Secretary of Transportation pursuant to the Motor Carrier Act ("MCA")(49 U.S.C. § 13501 *et seq.*). Defendant's motion for summary judgment argues that Plaintiffs' employment is subject to that exemption.

The exemption to the FLSA's overtime pay requirement is further clarified by regulations issued by the Department of Labor ("DOL"):

The exemption is applicable, under decisions of the U.S. Supreme Court, to those employees and those only whose work involves engagement in activities consisting wholly or in part of a class of work which is defined (i) as that of a driver, driver's helper, loader, or mechanic, and (ii) as directly affecting the safety of operation of motor vehicles on the public highways *in transportation in interstate or foreign commerce within the meaning of the Motor Carrier Act.*

29 C.F.R. § 782.2 (emphasis added).

The MCA was enacted by Congress in 1935:

to promote efficiency, economy, and safety in the motor transportation industry. Under the MCA, the Interstate Commerce Commission ("ICC") was granted regulatory power over the employees of motor carriers, and motor private carriers. In 1966, Congress transferred this regulatory power to the Department of Transportation ("DOT").

*Turk v. Buffets, Inc.*, 940 F. Supp. 1255, 1258-1259 (N.D. Ill. 1996)(internal citations omitted).

The Secretary of Transportation is authorized by the MCA to regulate transportation between points ". . . in a State and another place in the same State through another State . . . ." 49 U.S.C. § 13501. Pursuant to 49 U.S.C. § 31502(b), the Secretary "may prescribe requirements for (1) qualifications and maximum hours of service of employees of, . . . a motor carrier; and (2) qualifications and maximum hours of service of employees of, . . . a motor private carrier, when needed to promote safety of operation." A "motor private carrier" is defined as

a person, other than a motor carrier, transporting property by motor vehicle when—(A) the transportation is as provided in section 13501 of this title; (B) the person is the owner, lessee, or bailee of the property being transported; and (C) the property is being transported for sale, lease, rent, or bailment or to further a commercial enterprise.

49 U.S.C. § 13102 (13). Plaintiffs do not contest that Defendant is a motor private carrier.

Significantly, the DOT retains its jurisdiction over the employees within the scope of its authority regardless of whether it has chosen to exercise its regulatory authority, and the overtime

6

exemption applies to such employees despite the lack of DOT regulations. *Turk*, 940 F. Supp. at 1259, citing *Southland Gasoline Co. v. Bayley*, 319 U.S. 44 (1943) and *Levinson v. Spector Motor Service*, 330 U.S. 649 (1947). As a result, "despite the possibly unfair circumvention of FLSA overtime requirements by some employers, it is the duty of Congress, not this court, to limit the jurisdiction of the DOT or expand the power of the DOL." *Turk*, 940 F.2d at 1261.

Defendant argues that Plaintiffs fall within the MCA exemption to the FLSA even though they do not drive out of state because Defendant's bread and trays were shipped from the Indiana bakery to Illinois stores, and in the case of the trays, back to Indiana, in a "practical continuity of movement" so as to constitute transportation in interstate commerce. (Def.'s Mem. at 6.)

The concept of "practical continuity of movement" was described by the Supreme Court in *Walling v. Jacksonville Paper Co.*, 317 U.S. 564, 569 (1943):

> If there is a practical continuity of movement from the manufacturers or suppliers without the state, through respondent's warehouse and on to customers whose prior orders or contracts are being filled, the interstate journey is not ended by reason of a temporary holding of the goods at the warehouse.

In the *Walling* case, the Supreme Court was construing the phrase "in [interstate] commerce" as it is used in the FLSA, where Congress intended to extend federal control to the farthest reaches of the channels of interstate commerce. *Id.* at 567. The scope of "transportation in interstate or foreign commerce" under the MCA, so as to fall within the exemption, is determined by the MCA and is not identical with the FLSA's "in [interstate] commerce." 29 C.F.R. § 782.7(a). The regulations observe that the ICC decisions prior to 1966 appear to have construed the MCA more narrowly than the courts have construed the FLSA. 29 C.F.R. § 782.7(b)(1). However, the DOL interprets the exemption for regulatory enforcement purposes by assuming that a movement in commerce for

purposes of the FLSA is also a movement in interstate commerce for purposes of the MCA. *Id.*

> Under this enforcement policy it will ordinarily be assumed by the Administrator that the interstate commerce requirements of the section 13(b)(1) exemption are satisfied where it appears that a motor carrier employee is engaged as a driver, driver's helper, loader, or mechanic in transportation by motor vehicle which, although confined to a single State, is a part of an interstate movement of the goods or persons being thus transported so as to constitute interstate commerce within the meaning of the Fair Labor Standards Act.

*Id.* The regulations note that this policy is without prejudice to any rights of employees under section 16(b) of the FLSA (29 U.S.C. § 216(b)). *Id.* However, as discussed further below, the "practical continuity of movement" test set out in the *Walling* case is also applied in the context of a private enforcement action under § 216(b).

Defendant argues that the undisputed facts establish the requisite continuity of movement in the movement of bread products from LaPorte, Indiana to Illinois, and in the movement of empty bread trays, including their return from Illinois to LaPorte. Because the facts necessary to prove the exemption are established with respect to the empty bread trays, it is not necessary to reach the issue of whether there would also be sufficient continuity of movement regarding the bread products.

Defendant argues that the factual situation regarding the bread trays is indistinguishable from that involved in *Bilyou v. Duchess Beer Distributors, Inc.*, 300 F.3d 217, 224 (2nd Cir. 2002). In that case, the Court of Appeals affirmed a District Court's holding in a private enforcement action under FLSA § 216(b) that beverage distributor drivers who traveled only within the state of New York were exempt from the FLSA. The employer in that case bought beverages from out-of-state suppliers and breweries, which delivered the beverages to the employer's warehouse and distribution center in New York. *Id.* at 219-20. The plaintiff drivers loaded their trucks at the New York facilities and made deliveries to customers in New York according to load sheets. *Id.* at 220. When

8

making the deliveries, the drivers also collected empty beverage containers, including aluminum cans, glass and plastic containers, and returnable or refillable containers such as empty barrels, bottles and pallets, which they took to the employer's New York facilities. *Id.* The empty glass and aluminum containers were processed by an entity related to the employer and sold to out-of-state recyclers. *Id.* at 220, 224. The returnable and refillable containers were packaged by that related entity and returned to the out-of-state brewery. *Id.* at 220. The Court of Appeals held that the transportation of the empties satisfied the requirement for application of the exemption, making it unnecessary to consider whether the distribution of the beverages also met the interstate commerce requirement. *Id.* The court cited the *Walling* case, among others, in holding that even if a carrier's transportation does not cross state lines, the interstate commerce requirement is satisfied if the goods being transported within the borders of one state are involved in a practical continuity of movement in the flow of interstate commerce. *Id.* at 223. The court held that the employer had a "fixed and persisting intent" to return the refillable empties to the out-of- state breweries. *Id.* at 225.

The court in the *Bilyou* case cited *Foxworthy v. Hiland Dairy Co.*, 997 F.2d 670, 674 (10th Cir. 1993). In *Foxworthy*, which was also a private enforcement action, the court held that the plaintiff's distribution within Oklahoma of dairy products that had been produced in Arkansas had a continuity of movement in interstate commerce sufficient to invoke the exemption. *Id.* at 673-74. In addition, the court held that the plaintiff's transportation of the empty plastic dairy product crates was sufficient, in itself, to support an exemption from the overtime provisions of the FLSA. *Id.* at 674. In that case, as in the present case, the empty containers (crates) were picked up on a daily basis, formed a significant portion of the plaintiff's duties, and were shipped promptly to an out-of-state location *Id.*

Plaintiffs argue that the transportation of the bread trays does not make their work exempt from the FLSA for two reasons. First, they argue, the trays pose a *de minimis* safety consideration. (Pls.' Resp. at 10.) Secondly, Plaintiffs argue that the bread trays are not "goods in commerce" as required by the MCA. (Pls.' Resp. at 13.)

Plaintiffs argue that "the lack of any substantial safety issue relative to the goods being shipped has been recognized by courts as insufficient to cause preemption of the wage and hour requirements of the FLSA." (Pls.' Resp. at 11.) However, as Defendant observes, "Plaintiffs overlook the fact that they are driving on highways with the trays, and that driving clearly affects highway safety." (Def.'s Reply at 4.)

Defendant's argument is supported by the case law. The Court of Appeals for the Sixth Circuit has stated, "It would appear to be beyond question that the driver of a common carrier vehicle directly affects the safety of operation of that vehicle." *Benson v. Universal Ambulance Service, Inc.*, 675 F.2d 783, 786 (6th Cir. 1982). As in the current case, the drivers in *Benson* apparently did not drive outside of the state, but the defendant was found to operate as a carrier in interstate commerce because the plaintiffs transported patients to and from airports for interstate travel. *Id.* The Court of Appeals for the First Circuit reached a similar conclusion in *Crooker v. Sexton Motors, Inc.*, 469 F.2d 206, 209 (1st Cir. 1972)("It is obvious that one who drives a vehicle in interstate commerce directly affects the safety of such operations as long as he is driving"). Similarly, the Court of Appeals for the Fifth Circuit held, in *Opelika Royal Crown Bottling Co. v. Goldberg*, 299 F.2d 37, 43 (5th Cir. 1962), that "driver-helpers" who are "on the trucks at all times, and . . . perform a number of recurring functions which relate to the safety of the vehicle, such as, loading and unloading cases of bottles and helping to direct the distribution trucks back onto crowded highways" directly affect

the safety of the motor vehicle. *See also Baez v. Wells Fargo Armored Service Corp.*, 938 F.2d 180, 182 (11th Cir. 1991)(finding *Opelika* controlling). If helping direct a truck onto the highway is a function relating to the safety of the vehicle, *a fortiori*, driving the truck is.

The cases relied upon by Plaintiffs, such as *Pyramid Motor Freight Corp v. Ispass*, 330 U.S. 695 (1947), and *Wirtz v. C & P Shoe Corp.*, 336 F.2d 21 (5th Cir. 1964), involved workers whose jobs consisted of loading goods onto trucks or directing the loading. See *Pyramid*, 330 U.S. at 699 n.5; *Wirtz*, 336 F.2d at 29. In *Wirtz*, for example, the court observed that the District Court allowed the exemption as to one employee who drove a truck as often as two or three times as week, but properly denied it as to employees who "occasionally rode the truck with the driver to the retail stores, and there helped unload the shoes, and with three employees who occasionally, and not as part of their regular duties, drove a truck." 336 F.2d at 29. The task of loading may or may not be sufficiently related to safety of vehicles of interstate commerce, but it is undisputed that Plaintiffs here do more than simply load the trucks with empty bread trays. Plaintiffs here actually drive the trucks on which the bread trays are loaded as part of the movement of those trays through interstate commerce.

Plaintiffs' second argument is that the bread trays are not a 'good' because the trays are not the container that the bread product was originally subsumed in, the trays are not sold by the Defendant to the purchasers of the bread product, and the trays are in a perpetual movement with no final destination. (Pls.' Resp. at 12-13.) However, Plaintiffs cite no authority applying the standard they propose. On the contrary, the returnable and refillable barrels and pallets discussed in the *Bilyou* case as well as the empty dairy product crates discussed in the *Foxworthy* case appear to be analogous to Defendant's empty bread trays here. In addition, Plaintiffs' proposed standard is

11

contrary to the decision in the *Opelika* case. In that case, the employer owned its own bottles. 299 F.2d at 39. The employer transported full bottles from the bottler, to the warehouse, to the retailer, and then, when empty, from the retailer to the warehouse, to the bottler. *Id.* The Court of Appeals agreed with the District Court that a basis for the application of the FLSA could be found in the in the movement of the empty bottles as "goods in commerce." *Id.* at 40. Although the court was considering "goods in commerce" for purposes of the FLSA, the court had no problem finding that the bottles were "goods whether they be empty or full." *Id.*

The bread trays are in a practical continuity of movement between the Chicago stores and the Indiana bakery. "Whether the transportation is of an interstate nature can be 'determined by reference to the intended final destination' of the transportation when that ultimate destination was envisaged at the time the transportation commenced." *Bilyou*, 300 F.3d at 223-24 (quoting *Project Hope v. M/V Ibn Sina*, 250 F.3d 67, 74 (2nd Cir. 2001)). "'[C]rucial to a determination of the essential character of a shipment is the shipper's fixed and persisting intent at the time of shipment.'" *Foxworthy*, 997 F.2d at 672 (quoting *Intl. Bd. of Teamsters, Chauffeurs, Warehousemen & Helpers v. Interstate Commerce Commission*, 921 F.2d 904, 908 (9th Cir. 1990)). The temporary pause of the bread trays at the Glendale Heights warehouse does not mean that they are no longer in interstate commerce. *Walling*, 317 U.S. at 568.

In a summary judgment motion, the initial burden is on the moving party to demonstrate, "with or without supporting affidavits," the absence of a genuine issue of material fact and that judgment as a matter of law should be granted in the moving party's favor. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met the initial burden, the opposing party must support its contentions with admissible evidence and may not rest upon the mere allegations

12

in the pleadings or conclusory statements in affidavits. *Id.* at 324. The non-moving party must designate specific facts showing that there is a genuine issue for trial. *Id.* "[N]either 'the mere existence of some alleged factual dispute between the parties' . . . nor the existence of 'some metaphysical doubt as to the material facts,' is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Group, Inc.*, 129 F.3d 391, 395 (7th Cir. 1997)(quoting *Anderson*, 477 U.S. at 247 and *Matushita Electrical Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

It is undisputed that Defendant's routemen like Plaintiffs transport the product in plastic trays, which, when empty, are collected by the routemen and delivered to the Glendale Heights warehouse. From there, the bread trays are taken to LaPorte, Indiana to be refilled with product. Although Plaintiffs appear to be attempting to create a question of fact by Kenneth Jones' affidavit, they do not argue that there is a question of fact about whether the bread trays are ultimately taken to Indiana. Even drawing all reasonable inferences in favor of the nonmovants, Jones' statement that "on most occasions" the empty bread trays he unloaded the previous afternoon would "often" still be in the warehouse, does not create an issue of fact. (Jones Afft. ¶ 8.) Plaintiffs have admitted that all bread trays were returned to LaPorte, and that empty trays were stored in the warehouse for between a few hours and twenty-four hours, depending on the schedule of the LaPorte truck. (Def.'s LR Stmt. ¶¶ 14, 15.) Even assuming that all 90 of the trays that were not returned during the week of June 1, 2002 were bread trays, that would be approximately one percent of the total of 6730 bread trays that were returned to LaPorte. Defendant has demonstrated a fixed and persisting intent that the bread trays travel from Indiana to Illinois and back to Indiana. Plaintiffs have not come forward with evidence to create a genuine question of fact opposing the application of the exemption, and

13

Defendant is entitled to judgment as a matter of law.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is granted. Judgment is entered for Defendant. This is a final order.

**IT IS SO ORDERED.**

**GERALDINE SOAT BROWN**
**United States Magistrate Judge**

**DATED: June 20, 2003**